Edward Lyle HALL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-83-576.

Court of Criminal Appeals of Oklahoma.

April 1, 1985.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

### OPINION

BUSSEY, Judge:

The appellant, Edward Lyle Hall, hereinafter referred to as the defendant, was convicted of Second Degree Murder, in Pittsburg County District Court, Case No. CRF–77–102, was sentenced to life imprisonment and he appeals.

The testimony at trial centered on the brutal stabbing death of Albert Cox, the farm supervisor at the Oklahoma State Penitentiary at McAlester, in the prison's chicken house on March 5, 1977. Warden Richard Crisp stated that he received a report on that day that the defendant inmate and Cox were missing. Crisp searched the chicken house, unstacked several 50 pound sacks of chicken feed and discovered Cox's bloody body.

Medical testimony established that Cox had been stabbed 13 times in the chest and neck areas and sustained a large skull fracture over his left ear. Dr. Merlin Dean Bellamy, who performed an autopsy on Cox, stated that he believed Cox had been stabbed on the feed sacks because of the large quantity of blood on the sacks.

Frank Ritter and his then eleven-year-old son, Vernon, were fishing near Ravia on the day in question when the defendant approached them. Frank Ritter testified

that the defendant grabbed Vernon, put a knife to his throat and stated, "I'm a desperate man, I killed someone getting out of McAlester." (Tr. 151). On rebuttal, the son corroborated his father's testimony.

The defense was that another inmate, Shelton Sealy, killed Cox. Guard Joe Kirkpatrick testified that he thought something was wrong when he saw Sealy exiting the chicken house in clean white clothes because usually if an inmate is working there his clothes become dirty. He also stated that Cox, a longtime friend, had told him that Sealy had threatened to kill him.

Inmate Jerry Hamilton testified that he overheard Sealy confessing to the killing to another inmate, but admitted he did not come forward with this information because he did not want to become involved.

Sealy testified that while he was in the chicken house, he saw Cox lying on the ground and then the defendant hit him four or five times and dragged him to the feed bin.

The defendant, serving 15 years for three armed robbery convictions, testified that when he entered the chicken house, he noticed Cox's body and that when he left the chicken house, Sealy was inside. Defendant stated that he was scared someone would report the body and that he would be beaten so he dragged the body to the feed sacks and covered him up. He took Cox's pickup and when he came upon the Ritters, he testified that he told them, "I'm a desperate man. There's been a man killed in McAlester and I'll probably be accused of it." (Tr. 261).

I.

■ Defendant initially asserts that the prosecutor improperly cross-examined his character witness, Bill Bailey. Defendant argues that it was improper for the prosecutor to attempt to elicit Bailey's opinion of

the type of man who would commit an armed robbery; however, the record reveals a failure to contemporaneously object. This alleged error has been waived. *Hanna v. State*, 560 P.2d 985, 989 (Okl.Cr. 1977).

■ We have long held that a trial court should allow cross-examination into matters which tend to explain, contradict, or discredit any testimony given by the witness or which tests his accuracy, memory, veracity or credibility. *Campbell v. State*, 636 P.2d 352 (Okl.Cr.1981), cert. den., 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). The extent of cross-examination rests in the sound discretion of the trial court and this Court will reverse only if that discretion is clearly abused, resulting in manifest prejudice to the accused. *Hickerson v. State*, 565 P.2d 684 (Okl.Cr.1977).

■ Defendant asserts as error a hypothetical question to Bailey that if the defendant killed Cox, would he change his opinion about the defendant's good character. Admittedly, this question was irrelevant, but the defendant suffered no prejudice as Bailey firmly replied that although his opinion would change he did not believe the defendant killed Cox.

■ Additionally, the defendant contends that it is improper impeachment of a character witness to cross-examine regarding specific instances of conduct, citing 12 O.S.1981, § 2608.[1] To this we agree, but the specific instances of misconduct in the instant case regard the defendant's escape, not the witness' and therefore, this contention misses the remark.

After reviewing the entire cross-examination of Bailey, we are unable to say the defendant suffered prejudice or that the trial court abused its discretion and thus, this assignment of error is without merit.

---

1. The statute reads in pertinent part:
 § 2608. *Evidence of Character and Conduct of Witness:*
 \* \* \* \* \* \*
 B. Specific instances of the conduct of a *witness*, for the purpose of attacking or support-
 ing his credibility, other than conviction of crime as provided in Section 609 of this Code, may not be proved by extrinsic evidence.... (Emphasis added) (Footnote omitted).

## II.

■ Next, the defendant argues that the trial court erred in permitting three witnesses to "rehash" in rebuttal, the State's case in chief. Defendant objects to the testimony of Jack Brannon, Vernon Ritter and Shelton Sealy; however, his motion for new trial omits Sealy in this respect and hence this issue regarding Sealy has been waived. *Nutter v. State,* 658 P.2d 492 (Okl.Cr.1983).

To both Brannon's and Ritter's testimony we observe the defendant's failure to pose a timely objection to any of the rebuttal testimony. Rather than interposing an objection prior to the State's first question on rebuttal, defense counsel waited until the State completed its examination, objected and then proceeded to thoroughly cross-examine them. Again, we emphasize the need for a *timely* objection. *Hanna,* supra at 989. Such a policy enables the trial court to rule before the defendant is prejudiced and also prevents the defendant from "laying behind the log."

■ The admission of testimony in rebuttal is a matter within the sound discretion of the trial court and will not be grounds for reversal absent an abuse thereof. It may be offered to explain, repel, disprove, or contradict facts given in evidence by an adverse party, regardless of whether such evidence might have been introduced in the case in chief or whether it is somewhat cumulative. *Wooldridge v. State,* 659 P.2d 943 (Okl.Cr.1983) and cases cited therein. Here, the testimony of Vernon Ritter contradicted the defendant's testimony that he told the Ritters, "someone's been killed," and not that "I killed someone." Brannon's testimony refuted the testimony of Kirkpatrick that Cox had told him (Kirkpatrick) that Sealy had threatened to kill him. Brannon's testimony on rebuttal was that Cox, a close friend, never mentioned that he had had problems with Sealy. Having found no abuse of discretion, this assignment of error is meritless.

## III.

As his third assignment of error, the defendant complains that three photographs depicting the discovery of Cox's body lying in the chicken house were erroneously admitted into evidence as they were more prejudicial than probative. We disagree.

■ Where photographs, because of their subject matter, carry a danger of prejudice they are still admissible unless the possibility of prejudice outweighs the probative value and this decision is a basic judicial determination of relevance. *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980); *Harger v. State,* 665 P.2d 827 (Okl.Cr. 1983). The admissibility of photographs lies within the sound discretion of the trial court. *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983). The photographs are probative of an issue in the case whether Cox was stabbed before or after he was put on the feed sacks. Further, the photographs served to corroborate and illustrate Dr. Bellamy's testimony about the location of the head in relation to the blood on the wall and the feed sacks and that the position of the body was consistent with being stabbed on the sacks. This assignment of error is without merit.

## IV.

As his fourth assignment of error, the defendant maintains that the trial court erred in admitting evidence of other crimes committed by him other than the murder with which he was charged.

Specifically, the defendant excepts to the Ritters' testimony about the events near Ravia as depicting evidence of assault, kidnapping and intent to steal their car.

■ As a general rule, evidence of other crimes is inadmissible and one is to be convicted, if at all, by evidence which shows one guilty of the offense charged. *Blackwell v. State,* 663 P.2d 12 (Okl.Cr. 1983); *Mitchell v. State,* 659 P.2d 366 (Okl. Cr.1983). We view such evidence as part of the entire transaction occurring immediately after the homicide. The testimony of Frank Ritter would likely have confused the jury without permitting Ritter to testi-

fy to the circumstances surrounding his encounter with the defendant.

■ As stated in *Walker v. State*, 608 P.2d 1156 (Okl.Cr.1980), evidence of the evasive tactics and force used by the defendant in attempting to elude law enforcement authorities and avoid capture is admissible as an exception to the general rule which excludes evidence of other crimes.

■ Finally, the defendant was not prejudiced as the jury was instructed that it could not consider evidence of other offenses the defendant allegedly committed as in any way tending to prove him guilty of Second Degree Murder. (O.R. 78). This assignment of error is without merit.

### V.

In his fifth assignment of error, the defendant argues that the double jeopardy provision of the United States Constitution barred the State from prosecuting him for Second Degree Murder because the State continued to rely on the evidence of escape to support its case. In *Hall v. State*, 650 P.2d 893 (Okl.Cr.1982), this Court reversed his First Degree Felony Murder conviction because the State failed to disclose certain exculpatory evidence. Prior to that trial, he pled guilty to Escape from Prison and subsequently was found guilty of felony murder, with the escape from prison as the predicate felony. However, in *Hall*, supra at 896, this Court found that the defendant waived his double jeopardy claim because he pled guilty to the escape charge after the escape felony murder charges had been consolidated, hereby effectively severing the once consolidated trial.

■ At the outset, the defendant's argument that our holding in *Hall*, supra, was erroneous is improperly before this Court as the present appeal must be limited to the instant trial and conviction for second degree murder.

■ Further, defendant's present claim that double jeopardy was not waived is not well taken because Second Degree Murder under a "depraved-mind" theory, with which he was charged, does not require the "same evidence test" proof of the escape. These two offenses have entirely dissimilar elements, unlike the defendant's prior felony murder trial utilizing escape as the predicate felony. Here, any evidence of escape was admissible as tending to show a part of a continuing transaction rather than establishing an element of Second Degree Murder under a depraved-mind theory. Therefore, the defendant could not validly contend he was being twice punished for the same offense.

### VI.

■ As his sixth assignment of error, the defendant urges that he should have been granted a preliminary hearing on the Second Degree Murder charge. Defendant reasons that by amending the original information charging him with First Degree Felony Murder, the issue of proving that his conduct evinced a depraved mind required more and different proof under a felony murder theory than had the homicide occurred "in the commission" of the escape. Compare, 21 O.S.1981, § 701.7(B) th 21 O.S.1981, § 701.8(1). Our treatment of this issue in *Murray v. State*, 562 P.2d 1157 (Okl.Cr.1977), is dispositive of the issue, therein we found that the defendant failed to file a plea in abatement or a motion to quash the amended information (amending the charge from First Degree Murder to Second Degree Murder) resulting in the defendant waiving his right to demand a preliminary hearing. Similarly, in the instant case, the record before us fails to reflect the filing of such motions; instead it affirmatively demonstrates defense counsel entered a plea of not guilty to the amended information.

### VII., VIII.

■ In his seventh assignment of error, the defendant contends that the court's instruction on flight was incomplete because it failed to explain why he fled. The defendant asks this Court to reassess the authority on flight instructions, citing case law that such evidence is only marginally

probative on the issue of guilt or innocence. This we decline to do. The trial court's flight instruction was identical to the Uniform Jury Instruction on this issue which fairly states the applicable law and thus we are unwilling to interfere with the court's discretion in giving said instruction. *Campbell v. State,* 636 P.2d 352 (Okl.Cr. 1981), cert. den., 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479; *Hutson v. State,* 550 P.2d 969 (Okl.Cr.1976). Further, defense counsel failed in his duty to present his own written flight instructions. *Wells v. State,* 559 P.2d 445 (Okl.Cr.1977).

■ In a related assignment of error, the defendant next argues that it was error for the trial court to fail to instruct on the lesser included offense of misdemeanor manslaughter. Defendant believes that Assault and Battery or Aggravated Assault and Battery were underlying misdemeanors that supported a misdemeanor/manslaughter instruction. See 21 O.S. 1981, § 711. While a trial court must instruct on those issues raised which have some support in the evidence, we are of the opinion that the evidence, presented at trial depicting the savagery of the homicide, simply did not warrant such instructions. *Dennis v. State,* 556 P.2d 617 (Okl.Cr. 1976); *Dilworth v. State,* 611 P.2d 256 (Okl.Cr.1980). "If there is no evidence in the record to warrant an instruction, it should not be given." *Dilworth,* supra at 259.

### IX.

■ As defendant's ninth assignment, he argues error in the court's refusal to appoint, at State's expense, a psychiatrist to perform psychological examination. Prior to the defendant's first trial, over three years prior to his third trial from which he brings this appeal, he filed a motion requesting a psychological examination at State expense. The court overruled his motion following a hearing on the matter. Prior to the instant trial and without further amplification, he reurged all previously filed motions. Appellant made no showing that his sanity would be a significant factor at trial. *Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Moreover, he did not plead or attempt to prove an insanity defense. We find no error.

### X.

■ As his final assignment of error, the defendant cites numerous instances of allegedly improper cross-examination and closing argument. Nearly all the comments went unobjected to at trial and are therefore waived. *Ellis v. State,* 652 P.2d 770 (Okl.Cr.1982). After a thorough review of the record, we cannot say that the prosecutor's conduct exceeded the bounds of propriety. This Court has often stated that the prosecutor is entitled to draw reasonable inferences and make reasonable comments on the evidence. *Ellis,* supra at 772, Judge Brett specially concurring. Absent objection, we have reviewed the comments alleged as improper and must conclude that the defendant's substantial rights were not prejudiced. *Smith v. State,* 656 P.2d 277, 283–284 (Okl.Cr.1982).

Accordingly, the judgment and sentence is AFFIRMED.

PARKS, P.J., concurs.

BRETT, J., concurs in result.