**Dewayne Allen BOYD, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–221.**

Court of Criminal Appeals of Oklahoma.

Sept. 11, 1987.

As Corrected Oct. 1, 1987.

Johnie O'Neal, Asst. Appellant Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Dewayne Allen Boyd, appellant, was tried by jury and convicted of nine (9) counts of Robbery With Firearms [21 O.S. Supp.1982, § 801], After Former Conviction of Two or More Felonies [21 O.S.1981, § 51(B)], in Case No. CRF–84–434 in the District Court of Tulsa County, the Honorable Joe Jennings, District Judge, presiding. The jury set punishment at sixty-five (65) years imprisonment for each of the nine counts. Judgment and sentence was imposed in accordance with the jury's verdict, the sentences to run consecutively. We affirm.

On January 6, 1984, the appellant and two companions, Leonard Rose and Shellie Edmond, rode a Tulsa city bus to the Cobblestone Apartments. Finding the apartment manager alone in the office, Leonard Rose pointed a gun in the manager's face while the appellant moved behind her, put a large knife to her throat, and threatened to kill her if she did not tell them where the money was located. After the manager told the appellant that the money was in the next room, the appellant threw the manager to the floor, bound her hands and feet, and gagged her.

The apartment leasing agent and a prospective tenant entered the office, at which time Rose held a gun on them while the appellant bound their hands and feet and gagged them as they lay on the floor. As the appellant was binding the leasing agent, he threatened to blind her if she

looked at him. Prospective tenants, contractors, maintenance men and others continued to enter the office over the next twenty minutes. All were forced to lie on the floor while they were bound hand and foot and gagged. A total of nine people were subjected to this treatment.

The appellant demanded that the manager tell him if there was a safe and its combination. The manager complied after her gag was removed. The appellant was unable to open the safe and had the manager write the combination after her hands were unbound. Again the appellant was unable to open the safe and he lifted the manager off the floor and forced her to accompany him to the safe in the next room. She opened the safe and handed him the contents. The appellant and the manager were together at the safe for approximately ten minutes. When the manager first opened the safe, the appellant held the knife at her throat and threatened to kill her if the safe had an alarm.

After the safe was emptied, Leonard Rose held a gun to the back of the manager's head while the appellant, standing directly in front of the manager, stripped her of her jewelry. All of the other eight victims were also relieved of their jewelry and cash. The appellant then took the leasing agent's car keys and escaped in her vehicle, which was subsequently burned.

For his first assignment of error, the appellant asserts that it was error for the trial court to overrule his motion to suppress the in-court identification made by the apartment manager, the leasing agent and the contractor. Shortly after the robbery, the victims were shown a mug shot book containing several hundred photographs. None of the victims was able to identify the robbers. Evidence was introduced at trial, however, that this mug shot book did not contain pictures of Rose, Edmond, or the appellant. The manager, the leasing agent, and the contractor later viewed a photographic line-up consisting of six 1″ × 1¼″ photographs. All three identified Rose as the gunman, but were unable to identify the appellant, although they did indicate the person in photograph #4

looked familiar but the picture was too small and poorly lighted for them to be positive of their identification. Photograph #4 was of the appellant. The leasing agent positively identified the appellant at a police line-up. Neither the manager nor the contractor were available to attend the line-up, but did positively identify the appellant from a photograph taken of the police line-up.

■ The appellant asserts that the photographic line-up was unnecessarily suggestive leading to irreparable mistaken identification, as a result of which the witnesses' in-court identification should have been excluded. We disagree.

In the police line-up, at which the leasing agent identified the appellant, and the photograph taken of that same line-up, from which the manager and the contractor identified the appellant, all six subjects are identically dressed, all are of the same race, all are of the same general age, weight, and color. Of the six suspects, five, including the appellant, are at·least six feet tall. The sixth suspect in the photograph is approximately 5′11″. Five suspects, including the appellant, have short to medium Afro haircuts. We find there was nothing unduly suggestive about the circumstances surrounding the line-up and that all the guidelines for participants in a line-up were met as established in *Thompson v. State*, 438 P.2d 287, 289 (Okl.Cr. 1968).

■ Furthermore, assuming *arguendo* that the photographic line-up was unduly suggestive, a suggestive pre-trial confrontation will not invalidate a courtroom identification that can be established as independently reliable. *Bryson v. State*, 711 P.2d 932, 934 (Okl.Cr.1986), *cert. denied*, —— U.S. ——, 106 S.Ct. 1986, 90 L.Ed.2d 668 (1986).

In determining the inherent reliability of an in-court identification, we consider: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the

time between the crime and the confrontation. *Id. See also Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

The apartment manager had several opportunites to view the appellant during the twenty minute robbery: when the appellant questioned her to obtain the combination to the safe, when he had her write down the combination, when he forced her to open the safe and hand him the contents, and when he stood face to face with the manager and took her jewelry. The office was well lighted at the time of the robbery. The manager's concentration was highly focused on the appellant. The manager gave a very accurate description of the appellant to the police, and there was no uncertainty in her confrontation with the appellant at trial. Nor, under the circumstances of this case, do we find the three-month lapse between the time of the robbery and the in-court identification at the preliminary hearing to constitute an undue delay. Similarly, the leasing agent's and the construction manager's in-court identification of the appellant satisfies the *Bryson* test for independent reliability of the identification. This assignment of error is without merit.

For his second assignment of error, the appellant asserts that it was error for the trial court to permit the State to introduce extrinsic evidence concerning a collateral issue in rebuttal. Prior to offering the testimony of co-defendant Leonard Rose, defense counsel, outside the hearing of the jury, notified the court that the appellant, against advice of counsel, demanded that Rose be put on the stand on the appellant's behalf and that Rose would be perjuring himself. Rose and the appellant individually confirmed they wanted Rose to testify. The trial judge, who had previously heard Rose's guilty plea on February 13, 1984, in which Rose implicated the appellant in the robbery at the Cobblestone Apartments, advised Rose that he did not have to take the stand and had the right to have counsel present while testifying. The judge also notified Rose that any answer he might give would be used against him if perjury

charges were filed. Rose responded he understood and wanted to be called as a witness.

After the jury returned, the appellant called Leonard Rose to the stand, who testified that Rose and Shellie Edmond robbed the Cobblestone Apartments and that the appellant did not participate in the robbery. On cross-examination, the witness had a total and complete lapse of memory concerning any questions asked of him or of any answers given by him when he confessed to the robbery and when he testified at his trial that the appellant had participated in the robbery, even when the transcript of the taped voluntary confession and his trial transcript were read back to him. The State then called Officer Larry Latimer in rebuttal. Officer Latimer had taken Rose's taped voluntary confession on February 2nd and testified to the contents of that confession as impeachment evidence to rebut the witness' testimony given on direct examination. The State then read into the record the transcript of the February 13th guilty plea in which Rose admitted under oath in open court that the appellant participated in the robbery.

The appellant offered the testimony of the witness that the appellant did not participate in the robbery, thereby opening up the field of inquiry on direct examination on this issue. The appellant cannot now complain that the witness was cross-examined on the very issue opened up by the witness. *Burney v. State*, 594 P.2d 1226, 1229 (Okl.Cr.1979). Any matter is a proper subject of cross-examination which is responsive to testimony given on direct examination and which tends to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness, *Smith v. State*, 695 P.2d 864, 868 (Okl.Cr.1985), or which tests the witness' accuracy, memory, veracity, or credibility. *Campbell v. State*, 636 P.2d 352, 356 (Okl.Cr.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). The extent of cross-examination rests in the sound discretion of the trial court and the Court of Criminal Appeals will reverse only if that discretion is clearly abused, resulting in manifest prejudice to the appellant. *Hall v. State*,

698 P.2d 33, 36 (Okl.Cr.1985). We find no abuse of discretion by the trial court here.

■ Furthermore, the admission of rebuttal evidence is a matter within the sound discretion of the trial court and will not be grounds for reversal absent a manifest abuse of discretion. Rebuttal evidence may be offered to explain, repel, disprove, or contradict facts given in evidence by the adverse party, regardless of whether such evidence might have been introduced in the case in chief or whether it is somewhat cumulative. *Hall, supra* at 37. We do not find that discretion to have been abused here because: (1) the witness opened the door to the prosecution to contradict or rebut the veracity and credibility of his testimony given in the appellant's case in chief, *Chase v. State*, 541 P.2d 867, 870 (Okl.Cr.1975), and (2) the trial court instructed the jury that the confession or admission of Leonard Rose could not be used against the appellant (jury instruction #7) and that the evidence of Rose's inconsistent prior statements went to impeach the weight and credit to be given by the jury of that witness' testimony but could not be used as proof of innocence or guilt of the appellant (jury instruction #8). This assignment of error is without merit.

■ For his third and final assignment of error, the appellant claims that admission of evidence concerning his former convictions and the time sentenced on those convictions during the sentencing phase of his trial was error. The appellant was charged with nine counts of robbery with firearms, after former conviction of two or more felonies. The State introduced the certified judgment and sentences of the appellant's two previous convictions in 1980 for robbery with firearms in which he was sentenced to serve ten years imprisonment for each conviction. The appellant complains that by introducing the judgment and sentences the State indirectly informed the jury that the appellant was on parole when he committed the robberies at the Cobblestone Apartments.

We disposed of this argument in *Camp v. State*, 664 P.2d 1052, 1053 (Okl.Cr.1983), in which we found that introduction of the judgment and sentence during the sentencing phase of the trial is within the discretion of the trial court and is proper proof of former felony convictions in satisfaction of the requirements of 21 O.S.1981, § 51(B). That a juror is capable of subtracting 1980 from 1984 and reasonably inferring that the appellant had served only four years on a ten year sentence and was, therefore, on parole when he robbed the Cobblestone Apartments does not constitute an abuse of discretion in admitting the previous judgment and sentences. This assignment of error is completely devoid of merit.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.