**Billy Ray BATTENFIELD, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–85–195.**

Court of Criminal Appeals of Oklahoma.

July 18, 1991.

Rehearing Denied Sept. 17, 1991.

Gloyd L. McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen. of Oklahoma and Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Billy Ray Battenfield, appellant, was tried by jury and convicted of First Degree Malice Aforethought Murder (21 O.S.1981, § 701.7(A)), in Wagoner County District Court Case No. CRF–84–73, before the Honorable William Bliss, District Judge. The jury set punishment at death after finding that the murder was especially heinous, atrocious, or cruel and that appellant constituted a continuing threat to society. From this Judgment and Sentence, appellant appeals.

Codefendant Melvin James Battiest was tried separately for First Degree Murder, convicted, and sentenced to life imprison-

ment. On direct appeal, his conviction was affirmed. *Battiest v. State,* 755 P.2d 688 (Okl.Cr.1988).

The decedent, Donald Cantrell, was found lying face down near the water shortly after noon on April 23, 1984, in the Wahoo Bay area on Fort Gibson Lake near Wagoner, Oklahoma. According to Dr. M.F. Merchent, a forensic pathologist, the cause of death was multiple blunt force injuries to the head and chest, consistent with the use of a tire iron. Abrasions found on the decedent's neck, ears, cheek and chin were inflicted after death. Dr. Merchent testified the decedent lived "a few minutes" after receiving an injury fracturing three (3) of his ribs. The decedent's blood alcohol concentration level was .12 percent.

On April 22, 1984, the decedent and William Bectol went to a bar in Muskogee, Oklahoma, where they met Bechtol's daughter, Linda, her common law husband, codefendant Melvin Battiest, Grace Alford, appellant, his girlfriend, Virginia Jackson, and B.G., her sixteen-year-old son. The decedent helped buy beer for the group with money he retrieved from a bank bag in his pickup. Upon encouragement by Linda Bectol and Melvin Battiest, the group left the bar to continue their partying at Wahoo Bay. The decedent led the way in his pickup with appellant and Battiest as his passengers. Virginia Jackson drove appellant's car, transporting Linda, Grace and B.G. to the lake. Upon arriving, appellant, Battiest and the decedent stood outside the pickup drinking beer. Appellant approached Virginia, who was sitting in his car, retrieved the car keys, opened and closed the trunk, and returned the keys to Virginia. B.G. testified that when the group left the bar, appellant, Battiest and Linda had a scheme for robbing the decedent. B.G. also testified that the next day appellant admitted hitting the decedent in the head one time with a tire iron.

After appellant announced the decedent had passed out, the group left the lake. Appellant drove the decedent's pickup to Broken Arrow, where he poured gasoline on it and set it on fire. Appellant was seen wearing the decedent's leather coat the next day. Criminologist Claude Berry testified that head hairs found on appellant's jeans and stocking cap were consistent with the decedent's hair.

Appellant presented no evidence during the first stage. The State's motion to incorporate first stage evidence during the second stage was granted. Appellant, against advice of counsel, presented no evidence in mitigation.

## I.

## JURY SELECTION

Appellant first claims the trial court erred in excusing venireman Elliott for cause over defense counsel's objection. Appellant contends Elliott was improperly excused under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and that the later decision in *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), represented only a "slight modification" of *Witherspoon.* (Brief of Appellant at 45). This position was rejected in *Walker v. State,* 723 P.2d 273, 281 (Okl.Cr.1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986), which recognized that the standard enunciated in *Witt* superseded and modified *Witherspoon* by eliminating the requirements of showing juror bias with "unmistakable clarity" and that a juror would "automatically" vote against the death penalty prior to excusal. *See Castro v. State,* 745 P.2d 394, 400 (Okl.Cr.1987), *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988); *Darden v. Wainwright,* 477 U.S. 168, 175, 106 S.Ct. 2464, 2469, 91 L.Ed.2d 144 (1986); *Coleman v. Brown,* 802 F.2d 1227, 1232 n. 2 (10th Cir.1986), *cert. denied* 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987).

Thus, the current standard is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Witt,* 469 U.S. at 424, 105 S.Ct. at 852 (footnote omitted). Further, despite a lack of "unmistakable clarity" in the printed record,

there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... [T]his is why deference must be paid to the trial judge who sees and hears the juror.

*Witt,* 469 U.S. at 425–26, 105 S.Ct. at 852–53.

■ As was true in *Darden,* 477 U.S. at 175, 106 S.Ct. at 2469, appellant here primarily relies on the wording of the trial court's questions prior to exclusion, arguing that such questions failed to correctly state the relevant standard:

As *Witt* makes clear, however, our inquiry does not end with a mechanical recitation of a single question and answer.... We therefore examine the context surrounding [the juror's] exclusion to determine whether the trial court's decision that [the juror's] beliefs would 'substantially impair the performance of his duties as a juror' was fairly supported by the record.

*Id.* (citations omitted).

■ During voir dire, the trial judge asked venireman Elliott, "If selected in a case where the law and the evidence warrants, could you, without doing violence to your conscious [sic], recommend the death penalty?" Mr. Elliott answered, "No, sir." (Tr. 37). The trial judge then responded "[Y]our statement is that you just can't consider the death penalty at all?" to which Mr. Elliott responded "Yes, Sir." (Tr. 38). When the State moved to excuse Elliott for cause, defense counsel objected and was allowed an opportunity for rehabilitation. During defense counsel's attempted rehabilitation, Mr. Elliott stated that he could consider the law and alternative forms of punishment instructed on by the trial court. Defense counsel then asked, "Can you consider the instruction on the death penalty that the Court may or may not submit?" Mr. Elliott responded, "I could consider it, yes." (Tr. 39–40). The trial judge then asked, "If selected as a juror in a case where the law and the evidence warrants ... could you, without doing violence to your conscious [sic], recommend the death

penalty?" Mr. Elliott responded, "No, sir, I couldn't." (Tr. 40).

■ We agree with appellate counsel that trial judges should avoid asking a potential juror whether he or she could recommend the death penalty "without doing violence to your conscience." The use of such terms is at best confusing. *See Banks v. State,* 701 P.2d 418, 422 n. 1 (Okl.Cr.1985). While the trial judge's question to Elliott "may not have been ideal, we cannot conclude that it was inconsistent with the 'substantial impairment' test articulated in *Witt." Darden v. Wainwright,* 767 F.2d 752, 754 (11th Cir.1985), *aff'd* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). *See also Davis v. Maynard,* 869 F.2d 1401, 1408–9 (10th Cir.1989). Despite the trial judge's use of the confusing phrase "without doing violence to your conscience," he inquired further into the depth of Elliott's convictions by asking whether Elliott's position was that he could not "consider the death penalty at all?" to which Elliott responded, "Yes, sir." (Tr. 38). We recognize that "not all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe the death penalty is unjust may nevertheless serve as jurors in capital cases *so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law." Lockhart v. McCree,* 476 U.S. 162, 176, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137 (1986) (emphasis added). However, at no point in time did Mr. Elliott state, nor was he asked by defense counsel, whether he could temporarily set aside his personal beliefs in deference to the law and recommend the death penalty where appropriate under the facts and the law. *Id.* 476 U.S. at 176, 106 S.Ct. at 1766. Considering the entire record surrounding Elliott's exclusion, including trial counsel's attempted rehabilitation, and giving appropriate deference to the trial judge, we hold that Elliott's responses "sufficiently demonstrated that his beliefs about capital punishment would 'substantially impair' his ability to serve as a juror." *Coleman,* 802 F.2d at 1232.

## II.

## GUILT–INNOCENCE ISSUES

### A.

■ Appellant next argues he was denied a fair trial and his right to confront the witnesses against him because the State called a witness, Melvin Battiest, knowing he would invoke his Fifth Amendment privilege against self-incrimination. When the State called Melvin Battiest as a witness, Battiest gave no response when the trial judge attempted to administer the oath required by 12 O.S.1981, § 2603. The trial judge told Battiest to be seated and trial counsel for appellant asked to make a record. Counsel for Mr. Battiest then made the following record, in relevant part, in open court:

> Mr. Battiest is codefendant in this case, and subject to be tried.... We have advised the prosecutor earlier that our advice to Mr. Battiest is that he not testify, and that he will invoke his fifth amendment privilege not to be compelled to do so, and we object [to] him being called.

(Tr. 816). Upon inquiry by the trial judge, Mr. Battiest responded that his counsel's announcement was correct. When Prosecutor Sperling asked him to state his name, Battiest replied, "I deny to answer that question." The prosecutor stated "Excuse me?" and Battiest repeated his prior answer. At this point, the trial judge excused the jury. (Tr. 817). Outside the presence of the jury, the prosecutor continued to question Battiest, whose counsel stated three times that his client invoked his fifth amendment privilege. After Battiest stated his counsel's announcement was correct, he was excused by the trial judge. (Tr. 818). Trial counsel for appellant made a motion for mistrial, which was overruled.

■ Under Section 3–5.7(c) of *The ABA Standards for Criminal Justice, The Prosecution Function* (1980), "[a] prosecutor should not call a witness who the prosecutor knows will claim a valid privilege not to testify for the purpose of impressing upon the jury the fact of the claim of privilege...." The Oklahoma Evidence Code mandates that "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury." 12 O.S.1981, § 2513(B). It is unfortunate that trial counsel did not file a pretrial motion *in limine, see* K. McKinney, *Privileges* 32 Okla.L.Rev. 307, 333 (1979), or request to make a record at the bench outside the hearing of the jury, *see* 12 O.S.1981, § 2104(C), as soon as the State called codefendant Battiest as a witness. Appellate counsel concedes trial counsel did not request a no adverse inference limiting instruction (Brief of Appellant at 58), which would have been required upon request. *See* 12 O.S.1981, § 2513(C). However, the mere fact that a witness claims his testimonial privilege in the presence of the jury does not necessarily constitute reversible error. *See Namet v. United States,* 373 U.S. 179, 186, 83 S.Ct. 1151, 1154, 10 L.Ed.2d 278 (1963); *Payne v. State,* 744 P.2d 196, 200 (Okl.Cr.1987); *Maxwell v. State,* 742 P.2d 1165, 1170 (Okl. Cr.1987). In determining whether reversible error exists, an appellate court should look

> to the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error. First ... error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege.... A second theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.

*Namet,* 373 U.S. at 186–87, 83 S.Ct. at 1154–55.

The record does not support a finding either that the State made a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege, or that the witness' refusal to answer the question of his name added

critical weight to the prosecution's case in a form not subject to cross-examination. This case is thus distinguishable from *Payne,* 744 P.2d at 204–4 (Parks, J., dissenting). While the better practice clearly would have been for the trial judge to have held an in camera hearing to determine this question outside the jury's presence, on this record, absent such a request by trial counsel, we do not find reversible error.

### B.

■ Appellant next argues the trial court erred in refusing to suppress statements made by appellant to Wagoner County Undersheriff Floyd Wesley Owens during court recesses. In an in camera hearing, Officer Owens testified that appellant initiated discussions with him by asking questions concerning voir dire and police investigation procedures regarding vehicular arson cases. According to Officer Owens, appellant made the following statement directly concerning his case: "There's only one person who knows what happened out there, and that's me." (Tr. 1270). Owens responded, "There's one other person." When appellant asked, "Who was that," Owens said, "Don Cantrell, but he can't tell us about it." Appellant replied, "That's right." Appellant also commented that he could not take the stand to testify. (Tr. 1270). Trial counsel moved to suppress the statements, but did not state any specific grounds for his motion nor did he challenge the voluntariness of the statements. On appeal, appellant claims admission of the statements violated the Fifth and Sixth Amendments of the United States Constitution, and Article 2, Section 20 of the Oklahoma Constitution. We disagree.

■ The right to counsel under the Fifth Amendment extends to custodial interrogation. *McCaulley v. State,* 750 P.2d 1124, 1126 (Okl.Cr.1988), citing *Michigan v. Jackson,* 475 U.S. 625, 629–30, 106 S.Ct. 1404, 1407–8, 89 L.Ed.2d 631 (1986). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating re-

sponse from the subject." *Rhode Island v. Innis,* 446 U.S. 291, 300–1, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The record does not support a finding that Officer Owens engaged in the functional equivalent of interrogation. Rather, the record supports a finding that appellant initiated the discussions with Officer Owens, and that Owens could not have reasonably known that his responses to appellant's questions would elicit an incriminating response. *McCaulley,* 750 P.2d at 1127. Therefore, we reject the Fifth Amendment claim.

■ The right to counsel under the Sixth Amendment extends to post arraignment interrogations. *McCaulley,* 750 P.2d at 1124, citing *Michigan v. Jackson,* 475 U.S. at 629–30, 106 S.Ct. at 1407–8. In *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985), the United States Supreme Court held that a defendant's Sixth Amendment right to counsel was violated where state agents, after the defendant was charged, made arrangements with a codefendant to act as an undercover state agent and to record conversations between the defendant and codefendant at a meeting called to discuss trial strategy for pending criminal charges. *Id.* U.S. at 177, 106 S.Ct. at 488. "By concealing the fact that [the codefendant] was an agent of the State, the police denied [the defendant] the opportunity to consult with counsel and thus denied him the assistance of counsel guaranteed by the Sixth Amendment." *Id.*

[11] The instant case is clearly distinguishable from *Moulton.* The unrefuted testimony of Officer Owens shows that appellant initiated the discussions with Owens by asking questions. Officer Owens was in uniform and obviously did not conceal his status as a state agent. Under these circumstances, it cannot be said that Owens' mere participation in a conversation with appellant constituted interrogation. The record is devoid of any words or actions on the part of Owens that could be construed as the functional equivalent of interrogation. Officer Owens testified that appellant's statement "was just out of thin

air, just, you know, no questions of him were asked in any way." (Tr. 1271). This is not a case where a state agent "deliberately elicited" an incriminating response, *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964), or intentionally created a situation likely to induce incriminating statements. *United States v. Henry*, 447 U.S. 264, 274, 100 S.Ct. 2183, 2189, 65 L.Ed.2d 115 (1980). "[T]he primary concern of the *Massiah* line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation." *Kuhlmann v. Wilson*, 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986). "[T]he Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached...." *Moulton*, 474 U.S. at 176, 106 S.Ct. at 487 (citation omitted). Appellant has failed to "demonstrate that the police ... took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Kuhlmann*, 477 U.S. at 459, 106 S.Ct. at 2630. We find no violation of appellant's Sixth Amendment right to counsel.

Appellant's claim under Article 2, Section 20 of the Oklahoma Constitution, presumes a finding that the words or actions of Officer Owens constituted interrogation. The record simply does not support such a finding. We are not persuaded that the Oklahoma Constitution requires a different result under the circumstances.

### C.

In his fourth assignment, appellant contends he was denied a fair trial by numerous improper prosecutorial comments and actions. Most of the comments complained of were not objected to and, in several instances where defense counsel's objections were sustained, the comment was stricken or the jury was admonished. Appellant attempts to characterize this case as one falling within the fundamental error rule where the combined effect of the prosecutor's actions "was so prejudicial as to adversely affect the fundamental fairness and impartiality of the proceedings and mandate a new trial." *Cobbs v. State*, 629 P.2d 368, 369 (Okl.Cr.1981). *See also Tobler v. State*, 688 P.2d 350, 353 (Okl.Cr. 1984). While some of the comments complained of were improper and not to be condoned, most of the comments when taken in context were within the bounds of reasonable argumentation, and we cannot agree they were so grossly improper as to require reversal or modification. *See Fisher v. State*, 736 P.2d 1003, 1009 (Okl.Cr. 1987), *cert. denied* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988).

### D.

■■■■ In his fifth assignment, appellant argues the evidence was insufficient to support his conviction. We disagree. The evidence against appellant is both direct and circumstantial. Therefore, due process requires us to examine the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Curtis v. State*, 762 P.2d 981, 982 (Okl.Cr.1988). *See also Drew v. State*, 771 P.2d 224, 227 (Okl.Cr.1989).

■■■■ Appellant relies upon his prior argument that Officer Owens' testimony was improper, which we have rejected, and asserts B.G.'s testimony concerning appellant's admission that he hit the decedent in the head with a tire iron was impeachable. However, we must accept all reasonable inferences and credibility choices supporting the trier of fact's verdict. *Curtis*, 762 P.2d at 982. The jury is permitted to believe one witness while disbelieving others. *Id.* at 983. Further, contrary to appellant's claim that the trial court allowed inadmissible hearsay, review of appellant's citations to the record reveals that the trial judge was careful to sustain proper objections made on hearsay grounds so as to keep out such testimony. We find the State presented sufficient evidence from which a rational trier of fact could have found appellant guilty of First Degree Murder.

## III.

## PUNISHMENT

### A.

 Appellant next contends the instructions given by the trial court on the "especially heinous, atrocious, or cruel" aggravating circumstance were improper. Specifically, appellant claims the trial court improperly directed a verdict of death during second stage instructions by reading the language from the Bill of Particulars listing the evidence the State was relying upon to support the "especially heinous, atrocious, or cruel" aggravating circumstance. (Tr. 1433–34, O.R. 53, 147). Appellant's position is untenable for several reasons.

First, Instruction No. 2 informed the jury of the specific *allegations* made by the State in its Bill of Particulars as support for the alleged aggravating circumstances. (O.R. 147). The trial court made it absolutely clear that the Bill of Particulars "is, in itself, not evidence that any aggravating circumstance(s) exist(s), and you must not allow yoursel[ve]s to be influenced against the defendant(s) by reason of the filing of this Bill of Particulars." (O.R. 148, Tr. 1434). Instruction No. 3 essentially mirrored *Oklahoma Uniform Jury Instructions—Criminal* (OUJI–CR) 434 (1981), and made it absolutely clear that appellant was presumed innocent of the allegations in the Bill of Particulars, and that guilt must be established beyond a reasonable doubt. (O.R. 148, Tr. 1435).

Second, Instruction No. 4 informed the jury "that, in arriving at your determination of punishment, you must determine whether at the time this crime was committed any one or more of the following aggravating circumstances existed beyond a reasonable doubt...." (O.R. 149, Tr.

1435). Appellant's argument that the jury might have understood the trial court's instructions as a directed verdict is utterly inconceivable. Third, the State is to be commended for pleading its factual allegations in the Bill of Particulars so as to comply with 21 O.S.1981, § 701.10, which states: "Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." *See Wilson v. State*, 756 P.2d 1240, 1244–46 (Okl.Cr.1988), where the State's failure to comply with the notice requirement of Section 701.10 resulted in modification of a death sentence.

### B.

In his eighth assignment, appellant argues the trial court committed fundamental error by failing to define the elements of the "continuing threat" aggravating circumstance. Defense counsel failed to submit a requested instruction on this issue. We have previously rejected this argument, holding that "this aggravating circumstance is specific, not vague, and is readily understandable." *Liles v. State*, 702 P.2d 1025, 1031 (Okl.Cr.1985), *cert. denied* 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). *See also Smith v. State*, 737 P.2d 1206, 1215 (Okl.Cr.1987), *cert. denied* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987).[1]

### C.

 Appellant next asserts that his sentence of death is disproportionate and excessive when compared to sentences imposed in similar cases. We first note that the procedure of conducting a proportionality review, previously mandated by 21 O.S.1981, § 701.13(C)(3), was eliminated by the Legislature through its enactment of 21 O.S.Supp.1985, § 701.13(C).[2] Further-

---

**1.** While this writer is "not presently prepared to abandon my opinion regarding the validity of the 'continuing threat' circumstance, I agree with appellant that more definitive guidance is needed." *Boltz v. State*, 806 P.2d 1117, 1126 (Okl.Cr.1991) (Parks, P.J., specially concurring). However, I yield my view to that of the majority of this Court on the basis of *stare decisis*.

**2.** It continues to be the opinion of this writer that *ex post facto* prohibitions mandate a proportionality review when an appellant committed his crime before July 16, 1985, the effective date of 21 O.S.Supp.1985, § 701.13(C). *See Foster v. State*, 714 P.2d 1031, 1042 (Okl.Cr.1986) (Parks, P.J., specially concurring). As appellant herein murdered his victim on April 22, 1984, I find that a proportionality review is necessary.

more, "[t]his Court is not required to perform such a comparison to meet constitutional standards." *Foster v. State*, 714 P.2d 1031, 1041 (Okl.Cr.), *cert. denied* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986), citing *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In reviewing claims of excessive punishment, this Court has consistently held that we will look to all of the facts and circumstances of the particular case to determine whether the sentence imposed shocks the conscience of this Court. *Bristol v. State*, 764 P.2d 887, 891 (Okl.Cr.1988). After reviewing the evidence introduced in the present case, we cannot say that appellant's sentence shocks our conscience.

#### D.

 For his next assignment, appellant contends the trial court committed fundamental error by failing to instruct the jury *sua sponte* on "the presumption of life." Because no such instruction was requested at trial, this issue had been waived for purposes of appellate review. *Fox v. State*, 779 P.2d 562, 574 (Okl.Cr.1989), *cert. denied* — U.S. —, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). Even had this issue been properly preserved, we would find no error. Appellant cites no relevant authority, and we are unable to locate any, to support this assignment. Rather, we find appellant's argument similar to that addressed and rejected in *Johnson v. State*, 731 P.2d 993, 1005 (Okl.Cr.1987), *cert. denied* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987). The jury in the present case was properly instructed that appellant was presumed innocent of the charges alleged in the Bill of Particulars unless his guilt was established beyond a reasonable doubt. The jury was further instructed that it could not consider a sentence of death unless it unanimously found beyond a reasonable doubt the existence of an aggravating circumstance and that the aggravating circumstance outweighed any mitigating circumstances. These instructions communi-

cated the proper standards to guide the jury in its deliberations.

#### E.

As his final assignment, appellant alleges that the cumulation of errors mandate reversal of his conviction or modification of his sentence to life imprisonment. We have previously identified no errors warranting modification or reversal. The one error requiring addition discussion is addressed infra.

#### IV.

#### MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1985, § 701.-13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance.

#### A.

 Having reviewed the record, we cannot say the sentence of death was imposed because the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp.1985, § 701.-13(C)(1).

#### B.

The jury found the existence of two aggravating circumstances: (1) the murder was especially heinous, atrocious, or cruel; and (2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. (O.R. 159). *See* 21 O.S.1981, § 701.12(4) and (7).

#### 1.

 Appellant argues the evidence was insufficient to support the jury's finding that the murder was especially heinous,

---

I have compared appellant's sentence with previous cases and find that the sentence was proper. *See Castro v. State*, 745 P.2d 394, 409–10 nn. 3, 4 (Okl.Cr.1987); *Nguyen v. State*, 769 P.2d 167, 176 (Okl.Cr.1988) (Parks, J., specially concurring); *Moore v. State*, 788 P.2d 387 (Okl.Cr. 1990); *Boltz v. State*, 806 P.2d 1117 (Okl.Cr. 1991).

atrocious, or cruel. We agree. This aggravating circumstance is limited to murders where there is evidence the death of the victim was preceded by torture or serious physical abuse. *Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr.1987) (Opinion on Rehearing), *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *Foster v. State,* 779 P.2d 591, 593 (Okl.Cr.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 3293, 111 L.Ed.2d 801 (1990); *Nguyen v. State,* 769 P.2d 167, 174 (Okl.Cr.1988), *cert. denied* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989); *Rojem v. State,* 753 P.2d 359, 369 (Okl.Cr.), *cert. denied* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988); and *Hale v. State,* 750 P.2d 130, 142 (Okl.Cr.), *cert. denied* 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988). *See also* Rosen *The "Especially Heinous" Aggravating Circumstance in Capital Cases—The Standardless Standard,* 64 N.C.L.Rev. 941, 965 (1986) (states that have not adopted the serious physical abuse standard have been unable to apply the especially heinous aggravating circumstance within narrow, consistent and discernible bounds to avoid constitutional infirmity).

The facts herein closely parallel *Odum v. State,* 651 P.2d 703, 707 (Okl.Cr.1982), where the victim was rendered immediately unconscious from a single gunshot wound to the neck, and died within minutes due to asphyxiation. *See also Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (death sentence based on murder being "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim" invalid where victims died instantly from shotgun wounds). The Court in *Odum* held that the especially heinous, atrocious, or cruel aggravating circumstance was not supported by the evidence, because "there was no evidence of any physical or mental suffering whatsoever and the manner of killing cannot be said to lie at the 'core' of the statutory aggravating circumstance." *Odum,* 651 P.2d at 707 (citation omitted).

Here, Dr. Robert Johnson, Assistant Medical Examiner for Wagoner County, testified the cause of death was "the blow to the head and from the beating that occurred at the same time." (Tr. II 868). Dr. Johnson further stated that some of the abrasions and contusions on the victim's head were consistent with a typical fight. He agreed that the type of blow to the victim's head would generally cause loss of consciousness immediately. (Tr. II 872). Dr. M.F. Merchent, a forensic pathologist who conducted an autopsy on the decedent, testified that the cause of death was blunt-force injuries to the head and chest. He opined that the combined trauma to the decedent's head could have rendered the victim unconscious "very fast." (Tr. II 977). Dr. Merchent testified the decedent suffered three (3) fractured ribs, which included trauma to a lung, prior to death. He further stated that because the rib injury caused air to escape the lung, death probably occurred "very rapidly." The victim's blood alcohol intoxication level was .12 percent.

 We find the instant case indistinguishable from *Odum* and *Godfrey,* 446 U.S. at 432, 100 S.Ct. at 1767. Absent evidence of conscious physical suffering of the victim prior to death, the required torture or serious physical abuse standard is not met. *See Stouffer,* 742 P.2d at 564; *Odum,* 651 P.2d at 707. This Court should not affirm a death sentence until it has independently assessed the record evidence and determined that such evidence supports the sentencer's finding of an aggravating circumstance. *See Godfrey,* 446 U.S. at 429, 100 S.Ct. at 1765; 21 O.S.Supp. 1985, § 701.13(C)(2) and (F). This Court has an affirmative obligation to keep the application of aggravating circumstances within constitutional bounds, and to prevent them from becoming a "catch-all" for capital cases which do not fit any other statutory aggravating circumstances. *See Id.* The Tenth Circuit's decision in *Cartwright v. Maynard,* 822 F.2d 1477, 1487–91 (10th Cir.1987), explicitly details this Court's failure to fulfill this obligation between 1980 and 1987 with regard to the aggravating circumstance at issue.

Consequently, we must remain vigilant and conscientious to consistently apply the

*Stouffer* narrowing construction to rebut "any suggestion that [this Court] engages in only cursory or rubber-stamp review of death penalty cases...." *Proffitt v. Florida*, 428 U.S. 242, 259, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976) (footnote omitted). The instant case simply "cannot be said to lie at the 'core' of the statutory aggravating circumstance." *Odum*, 651 P.2d at 707 (citation omitted). Accordingly, we hold that the State failed to present sufficient evidence from which a rational trier of fact could find the requisite torture or serious physical abuse beyond a reasonable doubt in order to support the especially heinous, atrocious, or cruel aggravating circumstance. *See* 21 O.S.1981, §§ 701.11, 701.-12(4).[3]

### 2.

▮ In addition to the aggravating circumstance invalidated above, the jury also found the existence of a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. This Court has previously determined the latter circumstance to be appropriate in cases where the evidence established, *inter alia*, the defendant participated in other unrelated criminal acts, *Walker*, 723 P.2d at 285, the nature of the crime exhibited the calloused nature of the defendant, *Nguyen*, 769 P.2d at 174, and the defendant had previously been convicted of a crime involving violence, *Newsted v. State*, 720 P.2d 734, 741 (Okl.Cr.), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). To prove this aggravating circumstance, this Court has held that "the State may present any relevant evidence, in conformance with the rules of evidence, ... including evidence from the crime itself, evidence of other crimes, admissions by the defendant of unadjudicated offenses or any other relevant evidence." *Liles*, 702 P.2d at 1031.

In the present case, the State introduced evidence that appellant, Battiest and his common law wife planned the robbery of Don Cantrell because they believed he had two hundred dollars ($200.00). At the scene, appellant retrieved a tire iron and participated in the savage beating of the victim. Mr. Cantrell suffered multiple skull fractures, several broken ribs and punctured lungs. After the murder, appellant drove Cantrell's truck to Broken Arrow, doused it with gasoline and set it on fire. The evidence of this calculated robbery, murder and attempted coverup, all for an expected return of one hundred dollars ($100.00) or less, clearly established the calloused nature of this crime. This was not a random act of violence which simply got out of control. The State also introduced evidence that appellant had previously been convicted of Assault and Battery With a Dangerous Weapon, After Former Conviction of a Felony. On the basis of the foregoing, we find sufficient evidence to support the jury's determination that there exists a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society.

In *Stouffer*, 742 P.2d at 564, this Court held that an independent reweighing of aggravating and mitigating circumstances where one of several aggravating circumstances has been invalidated is implicit to our statutory duty to determine the factual substantiation of a verdict and validity of a death sentence. *See also Nguyen*, 769 P.2d at 174; *Castro v. State*, 749 P.2d 1146 at 1148 (Okl.Cr.1987). Furthermore, the Supreme Court has recently held that there is "nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence." *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 1449, 108 L.Ed.2d 725 (1990). The Court also stated that the absence of written jury findings concerning mitigating

---

**3.** This writer remains convinced that the "especially heinous, atrocious, or cruel" aggravating circumstance is unconstitutionally vague both on its face and as applied. *See Foster v. State*, 779 P.2d 591, 594 (Okl.Cr.1989) (Parks, P.J., specially concurring). As a matter of *stare decisis*, however, I yield to the "torture or serious physical abuse" standard adopted in *Stouffer*, 742 P.2d at 563.

circumstances does not hinder an appellate court's performance of this function. *Id.*

Although appellant did not present any evidence in mitigation during the second stage of trial, the jury was instructed that evidence had been offered as to the following mitigating circumstances:

1. Defendant was not a principal actor in the homicide.

2. All other evidence introduced by the State of Oklahoma which tends to mitigate the punishment herein.

(O.R. 153). The jury was further instructed that mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. (O.R. 152).

Having carefully weighed the evidence offered in support of the "continuing threat" aggravating circumstance against any evidence which, in fairness and mercy, may be considered as mitigating, we find that the sentence of death is factually substantiated and valid.

On the basis of the foregoing, the Judgment and Sentence is

AFFIRMED.

LANE, P.J., and LUMPKIN, V.P.J., and BRETT, J., concur.

JOHNSON, J., not participating.